IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Brief October 31, 2002 Session

## JAMES W. CLARK v. JIM ROSE

**Direct Appeal from the Chancery Court for Lauderdale County**
**No. 11,487      Martha B. Brasfield, Chancellor**

---

**No. W2002-01245-COA-R3-CV - Filed February 5, 2003**

---

This case involves a prisoner's allegations that correctional personnel failed to follow internal policies and procedures concerning administrative segregation of prisoners, thus denying him his due process rights. As we are unable to determine from the record if Appellant's continued presence in administrative segregation is actually non-punitive in nature, we reverse the trial court's dismissal of Appellant's petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

James W. Clark, *Pro Se*.

### OPINION

At the time of the filing of his petition, Appellant was incarcerated at the West Tennessee State Penitentiary. By order of the warden, Appellant was placed in Involuntary Administrative Segregation (AS) in September, 1997. Appellant claims that since his placement in AS he has not been afforded a meaningful review of his status as mandated by statute and internal prison policies. Appellant claims that said policies give rise to a "liberty interest" in receiving such review of his AS status and, therefore, failure to provide such a review amounts to a due process violation.

Appellant filed his initial petition February 10, 2000. The Respondent was apparently never served, and never answered the complaint. Prompted by Respondent's failure to answer, Appellant filed a motion for default judgment on May 22, 2000. Appellant then filed a motion to show cause and request for ruling with the trial court on June 21, 2000. On August 7, 2000, Appellant filed a writ of Mandamus with this Court, which was denied by order dated April 10, 2001. The trial court filed its Order of Dismissal on April 22, 2002, wherein it denied petitioners request for default judgment and dismissed the Appellant's petition stating that

Writs of certiorari at common law are employed to review actions of inferior tribunals, boards, or officers which exercise <u>judicial</u> functions. Further, the writ may only determine if the tribunal, board, or officer exceeded the jurisdiction conferred or acted illegally. <u>See</u>, <u>Boyce v. Williams</u>, 389 S.W.2d 272 (1965), and <u>Utley v. Rose</u>, 2001 Tenn. App. LEXIS 161. The determination of the security classification or security status of a prisoner in the custody of the TDOC is an administrative function of TDOC; it is not a judicial function. Therefore, a prisoner's security status or security classification cannot be determined or changed through a writ of certiorari because the determination is administrative in scope, and not judicial in scope.

Appellant raises four questions on appeal, which we combine and restate as follows: Whether the trial court erred in refusing to find that Appellee's failure to follow the Department of Correction's policies, requiring periodic review of Appellant's administrative segregation status, was a denial of his due process rights.

### *Standard of Review*

Under a petition for common law writ of certiorari, a court's review of an administrative agency's decision is limited to a determination of whether the administrative body acted within its jurisdiction or acted illegally, arbitrarily, or capriciously. ***Cooper v. Williamson County Bd. of Educ.***, 746 S.W.2d 176, 179 (Tenn. 1987). The common law writ does not provide a remedy where a petitioner challenges the correctness of the decision of the decision-maker. ***Powell v. Parole Eligibility Review Bd.***, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994). "[T]he common law writ of certiorari is not available to test the intrinsic correctness of the law or facts of a particular case." ***Yokley v. State***, 632 S.W.2d 123, 126 (Tenn. Ct. App. 1981).

### *Effect of Failure to Serve Appellee*

In its order dated April 22, 2002, the chancellor stated that since "[t]he Respondent in this lawsuit has never been served . . . . default judgment against the Petitioner [sic] is inappropriate." This statement is correct. Service is not, however, a prerequisite to the granting of the writ. Section 27-9-108 of Tennessee Code Annotated provides that "[t]he court before granting the writ of certiorari ***may require notice*** of the application to be given to the adverse party, ***or may grant it without such notice***." Tenn. Code Ann. § 27-9-108 (2000)(emphasis added); ***see also Shelby County Sheriff v. Shelby County Civil Serv. Merit Bd.***, No. 31,1989 Tenn. App. LEXIS 657, at \*5 (Tenn. Ct. App. Oct. 9, 1989), ***perm. app. denied*** (Tenn. June 10, 1991).[1]

---

[1]We do not perceive a conflict between this statutory provision and Rule 55.04 of the Tennessee Rules of Civil Procedure which provides that "[n]o judgment by default shall be entered against the State of Tennessee or any officer or agency thereof unless the claimant establishes the claim or right to relief by evidence satisfactory to the court." Tenn. R. Civ. P. 55.04. First, the granting of the writ is not a "judgment" on the merits and further, even if the granting of the writ could be considered a "judgment," in order for the court to properly grant the writ the petitioner would have to put before the court "evidence satisfactory to the court" "establishing the claim or right to relief. . . ." Tenn. R. Civ. P. 55.04.

### *Trial Courts Dismissal*

The trial court dismissed the petition stating that

[t]he determination of the security classification or security status of a prisoner in the custody of the TDOC is an administrative function of TDOC; it is not a judicial function. Therefore, a prisoner's security status or security classification cannot be determined or changed through a writ of certiorari because the determination is administrative in scope, and not judicial in scope.

While this statement is technically correct, it is inapplicable to the facts of this case. Here, the review being sought by Appellant concerns the procedure followed in reaching the decision to keep the Appellant in AS. This Court has noted that where a petition for a common law writ of certiorari is concerned "it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision was reached." *Seals v. Bowlen*, No.M1999-00997-COA-R3-CV, 2001 Tenn. App. LEXIS 547, at \*8 (Tenn. Ct. App. July 26, 2001) (*no perm. app. filed*). In the present case this is precisely what Appellant was contesting-the manner in which the decision to keep him in AS was reached.

### *Propriety of Appellant's Action Under the Common Law Writ*

This Court has stated that "[t]he proper vehicle for challenging *a disciplinary action* is a petition for a common law writ of certiorari. . . ." *Rhoden v. State Dep't of Corr.*, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998) (emphasis added) (citing *Bishop v. Conley*, 894 S.W.2d 294 (Tenn. Cr. App. 1994)). This is said to be the case because "[a] prisoner *disciplinary proceeding* cannot be reviewed directly under the Uniform Administrative Procedures Act because the Act removes such proceedings from the definition of a contested case." *Rhoden,* 984 S.W.2d at 956 (citing Tenn. Code Ann. § 4-5-106(b) (emphasis added)).[2] We noted in *Woodruff v. Tenn. Dep't of Corr.,* No. M2001-00494-COA-R3-CV, Tenn. App. LEXIS 618, at \* 1 (Tenn. Ct. App. Aug. 28, 2002) (*no perm. app. filed*), however, that

[a]ccording to the Department's policies, *administrative segregation is not punishment for a disciplinary offense*. *Perry v. Campbell*, No. M1999-00943-COA-R3-CV, 2001 Tenn. App. LEXIS 31, at \*6 (Tenn. Ct. App. Jan. 22, 2001) (no Tenn. R. App. P. 11 application filed) (stating that "Department of Correction regulations make clear that *administrative segregation is a 'control mechanism,' not a disciplinary sanction*"). In fact, it is treated separately from disciplinary procedures in those policies. TDOC Policy # 404.10(IV) states that

---

[2]At least one member of the Criminal Court of Appeals believes that this statutory provision has been misinterpreted by the courts. Judge David G. Hayes concurring opinion in *Bishop v. Conley*, 894 S.W.2d 294 (Tenn. Crim. App. 1994), states that "[this] language . . . does not exclude disciplinary proceedings by the Department of Correction from the provisions of the UAPA." *Id.* at 297.

administrative segregation is "the ***non-punitive*** segregation for control purposes of inmates who are believed to be a threat to the security of the institution, the welfare of staff, or to other inmates." ([emphasis in original]). TDOC Policy # 404.10(VI)(A)(1) states:

> Administrative segregation . . . is provided as a means of control and management. This level of segregation is for inmates who, because of conditions surrounding their incarceration, are believed to pose serious risks to the security and good order of the institution or to the safety of other inmates, staff, or the community and therefore require custody and security at the highest level . . . .

> An inmate may be placed in administrative segregation in one of several ways. The warden has the authority to place an inmate in administrative segregation when "it is believed that a condition exists requiring immediate placement in administrative segregation to maintain security of the institution or to protect the staff and/or other inmates." TDOC Policy # 404.10(VI)(A)(2). Additionally, a disciplinary board may recommend to the warden that an inmate be placed in administrative segregation after a hearing and disposal of a charge for a disciplinary rule infraction. The recommendation should be given to the warden "when it is believed that continued presence in the general population may present a threat to security, the staff, or other inmates." TDOC Policy # 404.10(VI)(A)(3).

***Woodruff***, Tenn App. LEXIS 618, at *9-11 (emphasis added).

In ***Woodruff*** the prisoner was cited for violating prison rules and placed in administrative segregation pending a hearing by the disciplinary board. ***Id.*** at *2. The prisoner was ultimately found guilty, sentenced to twenty (20) days punitive segregation and fined. ***Id.*** The board also recommended to the warden that the prisoner be placed in administrative segregation, a recommendation which the warden accepted. ***Id.*** at *3. The prisoner "appealed the decision of the board to the warden, who denied the appeal." ***Id.*** The prisoner "then filed a petition for common law writ of certiorari . . . alleging [***inter alia***,] that the [disciplinary] board . . . failed to state the reason ***for his placement in*** administrative segregation [and] illegally, fraudulently, and arbitrarily ***placed him in*** administrative segregation. . . ." ***Id.*** (emphasis added). The trial court dismissed the claim, and this Court affirmed that dismissal of the petition as to the claims of denial of due process and failure to follow a procedural policy. The Court remanded the cause, however, to determine if the board had exceeded its authority by recommending administrative segregation as a punishment. ***Id.*** at *23.

In ***Woodruff*** the prisoner "allege[d] that ***the disciplinary board*** violated Department policies by not providing [him] with an adequate statement of the reasons prior to his placement in administrative segregation." ***Id.*** at *1-2 (emphasis added). As noted, it has been held that "[t]he proper vehicle for challenging a disciplinary action is a petition for a common law writ of

certiorari." ***Rhoden v. State Dep't of Corr.***, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998). However, as stated in ***Woodruff***, "TDOC's policies make clear [that] administrative segregation is not an available sanction for a disciplinary violation."[3] ***Woodruff v. State Dep't of Corr.,*** No. M2001-00494-COA-R3-CV, Tenn. App. LEXIS 618, at *19 (Tenn. Ct. App. Aug. 28, 2002) (***no perm. app. filed***).

In ***Woodruff***, however, the complaint related to the procedure followed during a disciplinary proceeding, one of the results of which was the non-disciplinary action of placement in AS. The prisoner was contesting the procedural correctness of the disciplinary proceeding which resulted in the non-disciplinary action of his placement in AS. Accordingly, as "[a] prisoner ***disciplinary proceeding*** cannot be reviewed directly under the Uniform Administrative Procedures Act because the Act removes such proceedings from the definition of a contested case[,]" ***Rhoden,*** 984 S.W.2d at 956 (citing Tenn. Code Ann. § 4-5-106(b) (emphasis added)), the common law writ was the "the appropriate vehicle" for challenging such a non-disciplinary action.

In the case ***sub judice,*** however, the decision being appealed is not one of the prison disciplinary board, but one of an "administrative review panel." Additionally, the review being sought concerns the decision to keep the Appellant in AS, as opposed to his initial placement there. This decision does not involve the prison disciplinary board, only the administrative review panel. We fail to see how an administrative panel's review of a non-disciplinary action can amount to a disciplinary proceeding thereby removing it from the purview of the UAPA. Accordingly, we hold that, with the exception of decisions regarding the initial placement in AS which result from the recommendation of the disciplinary board as part of a disciplinary proceeding, that the common law writ is not "the appropriate vehicle" for challenging such an action.[4] Our ultimate disposition in this case, however, does not require us to dismiss Appellant's case based on this holding.

---

[3]It appears from the record that Appellant's placement in AS was precipitated by a disciplinary infraction, although it is not clear if he served any time in punitive segregation. We note also that if the writ were not the proper means to bring the complaint, then dismissal would be proper.

[4]The Legislature has determined that the provisions of the UAPA "shall be given a liberal construction and any doubt as to the existence or the extent of a power conferred shall be resolved in favor of the existence of the power." Tenn. Code Ann. § 4-5-103(a) (2000). Additionally, the propriety of the application of the UAPA to a prisoner's claim involving administrative segregation is supported by the proposition that

> [t]he General Assembly . . . intended that the UAPA would apply to all existing agencies and to all pending administrative proceedings ***unless . . . expressly exempted***. Accordingly, the definitions in Tenn. Code Ann. § 4-5-102 are extremely broad and are modified by specific exceptions in Tenn. Code Ann. § 4-5-106. Relying on these broad definitions, the Tennessee Supreme Court has held that the General Assembly's intent to make the UAPA generally applicable is "unmistakably clear." ***United Inter-Mountain Tel. Co. v. PSC***, 555 S.W.2d 389, 391 (Tenn. 1977).

***Mid-South Indoor Horse Racing, Inc. v. Tenn. State Racing Comm'n***, 798 S.W.2d 531, 536 (Tenn. Ct. App. 1990) (emphasis added).

***Panel's Failure to Follow Internal Procedures as a Violation of Appellant's Due Process***

Appellant contends that the department's failure to follow its own internal policies and procedures deprived him of his due process rights. If Appellant's due process rights were violated then this would clearly be an illegal act, reviewable under the common law writ of certiorari. ***See Davis v. Campbell***, No. 01-A-01-9712-CH-00755, 1998 Tenn. App. LEXIS 784, at *4 (Tenn. Ct. App. Nov. 25, 1998) (***no perm. app. filed***). As Appellant's claimed due process violation is inextricably tied to his assertion that the Department has failed to follow internal procedures, we shall address these issues together.

In support of his claim, Appellant notes that Tennessee Code Annotated section 41-1-403 provides:

> [a] sound classification system is necessary for an efficient and manageable correctional system and because of its importance, the general assembly declares the following policy:
> (1) The classification system shall provide a meaningful case evaluation of each inmate prior to permanent placement and a continuing review and reclassification process throughout the inmate's period of incarceration. . . .

Tenn. Code Ann. § 41-1-103(1) (1997).

Additionally, Appellant asserts that

> [i]n an attempt to comply with the requirements of [Tenn. Code Ann.] § 41-1-403, the Department of Correction has promulgated various policies and procedures governing the classification of inmates. In the instant case, policies #404.10 VI(B)(1), (B)(3) and (B)(4) establish the guidelines to be used when reviewing the classification status on inmates who have been placed in administrative segregation.

Appellant goes on to list the policies in his complaint as follows:

> [Policy 404.10 VI(B)(1):] Periodic reviews by the administrative review panel shall be provided to determine whether or not release from AS should occur. When reviewing an inmate's case for possible release from AS, the panel should consider the following factors in making the determination:
> a. The inmate's complete institutional disciplinary record;
> b. Past criminal record;
> c. Past record of incarceration;
> d. Criminal activity in prison;
> e. Attitude toward authority;
> f. Institutional record on work assignment;
> g. Adjustment to program. . . ;

h. Willingness and ability to live harmoniously among others;

I. Record of violent reactions to stressful situations;

j. Existence of condition(s) which initially required segregation;

k. Involvement in security threat group activity, if applicable[.]

[Policy 404.10 VI(B)(3)]: A hearing before the administrative review panel should occur at least every thirty (30) calendar days and recommendations shall be documented on the AS Review Report B101D084 and forwarded to the warden.

[Policy 404.10 VI(B)(4)]: All hearings at the institutional level shall be conducted with the inmate present unless such is precluded for security or safety reasons, or the inmate refuses to attend, which shall be documented.

Appellant contends "that the very content of theses policies have [sic] given inmates within the State of Tennessee the expectation that they will receive meaningful reviews of their classification status and, as such, have created a liberty interest worthy of due process protection.

This same issue was recently addressed by this Court in the case of *Hall v. Campbell*, No. W2002-00301-COA-R3-CV, 2002 Tenn. App. LEXIS 765, at *1 (Tenn. Ct. App. Oct. 29, 2002) (*no perm. app. filed*), where, in response to the argument that

the disciplinary board's alleged failure to follow its own policies should be grounds for relief[, we stated that] [a] failure to follow TDOC policies may be considered illegal only when the Board's actions constitute a failure to follow the "essential requirements of the law." *See Ahkeen v. Campbell*, No. M2000-02411-COA-R3-CV, 2001 Tenn. App. LEXIS 815, at *15 (Tenn. Ct. App. Nov. 2, 2001). The "essential requirements of the law" are comprised of those rights established by the due process clause. [*Id.*] at *21-22. Therefore, "the disciplinary proceeding is not 'illegal' within the meaning of . . . the common law writ of certiorari simply because the disciplinary board failed to comply with its own internal disciplinary policies; the petition for a writ of certiorari must sufficiently allege a violation of due process." *Baxter v. Tenn. Dept. of Corr.*, No. M2000-02447-COA-R3-CV, 2002 Tenn. App. LEXIS 279, at *14 (Tenn. Ct. App. Apr. 23, 2002).

*Hall*, 2002 Tenn. App. LEXIS 765, at *16-17.

In *Hall* we also noted that

[t]he Sixth Circuit Court of Appeals has stated that "administrative segregations have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest without regard to duration," *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998), and that "after Sandin, [a prisoner cannot] argue that placement in administrative segregation is an 'atypical and significant hardship.'"

*Hall*, 2002 Tenn. App. LEXIS 765, at \*13 (alteration in original) (citing *Mackey v. Dyke*, 111 F. 3d 460, 463 (6ᵗʰ Cir. 1997)).

Based on the foregoing, in *Hall* we held that

> [s]ince Hall's confinement in administrative segregation is not atypical of ordinary prison life, he is therefore unable to establish that the disciplinary proceedings triggered due process protections. Consequently, the disciplinary board's alleged failure to follow its own policies is not sufficient to support a claim for relief.

*Hall*, 2002 Tenn. App. LEXIS 765, at \*17.

Unlike *Hall*, Appellant in the present case is not contesting the procedure followed in his initial placement in administrative segregation. The gravamen of his complaint is, rather, that his continued presence there without "meaningful" review amounts to a denial of his due process rights. As noted, however, "administrative segregation[] ha[s] repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest *without regard to duration*. . . ." *Jones v. Baker*, 155 F.3d 810, 812 (6ᵗʰ Cir. 1998)(citations omitted). "The United States Supreme Court has made it clear that only those restraints to a prisoner's liberty which impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' constitute deprivations which are actionable under the Due Process Clause." *Ponchik v. Paul*, No. W2002-00150-COA-R3-CV, Tenn. App. LEXIS 617, at \*9-10 (Tenn. Ct. App. Aug. 22, 2002) (*no perm. app. filed*) (citing *Sandin v. Conner*, 515 U.S. 472, 484, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995)).

As Appellant has made no claim that his continued presence in administrative segregation involves such an atypical and significant hardship, we find that here, as in *Hall*, Appellant's allegations are not sufficient to support a claim for relief. *See also Woodruff v. Tenn. Dep't of Corr.,* No. M2001-00494-COA-R3-CV, Tenn. App. LEXIS 618, at \*17 (Tenn. Ct. App. Aug. 28, 2002) (*no perm. app. filed*) ("Having determined that [petitioner] possesses no liberty interest in freedom from placement in administrative segregation, we also find that he has failed to state a claim for issuance of the common law writ of certiorari on the basis the board or the Department acted illegally.").

We note that while Appellant asserts that the policies at issue were formulated to comply with the statutory requirement of a "meaningful review" of his classification status, that the statute itself mandates only a "continuing review" of an inmate's classification throughout their incarceration. Tenn. Code Ann. § 41-1-403(1) (2000). Appellant's complaint does not allege that he has been denied such continuing review, only that the review was not done in accordance with internal procedures. Accordingly, to the extent that Appellant appears to equate violation of the internal procedures with violation of the statute we do not agree.

### Reasons Given for Appellant's Continued Stay in AS

This does not end the analysis, however. We noted in ***Woodruff*** that a prisoner lacks a liberty interest in "freedom from administrative segregation . . . which is nonpunitive." Woodruff, 2002 Tenn. App. LEXIS 618, at *21. We further noted in ***Woodruff*** that

> [t]here is also an important practical distinction behind the differing purposes for administrative and punitive segregation. Punitive segregation is limited in duration. [The prisoner] alleges that the maximum term of punitive segregation that could have been imposed upon him, based on the charge and his institutional record, is twenty days. Administrative segregation, however, is unlimited in duration, subject to periodic reviews with increasing levels of justification. Consequently, ***indefinite administrative segregation should not be used as additional punishment beyond that authorized***.

***Woodruff,*** Tenn. App. LEXIS 618, at *20-21(emphasis added). In the present case, Appellant was initially placed in AS on September 23, 1997. He filed his petition on January 31, 2000. The "administrative segregation review" forms which Appellant attached as exhibits to his initial complaint give the reason for continuance of the administrative segregation as "gravity of placement."[5] The form dated 8-4-99 further provides that the Appellant was "[p]laced on AS @ TCIP due to assault on inmate. . . ." "It has been noted that courts should be aware of the consequences of the name given to a particular type of segregation." ***Id.*** at *21. We agree that

> it makes little sense to hinge an individual's right to due process simply on the label prison officials choose to attach as the basis for the deprivation. Indeed, one of the reasons the Supreme Court rejected the 'mandatory language' analysis of Hewitt was because it had the 'undesirable effect' of discouraging States from codifying prison management procedures to avoid creating 'liberty' interests thereby 'conferring standardless discretion on correctional personnel.' Similarly, a due process analysis that would allow correctional personnel to avoid creation of 'liberty interests' by simply assigning misbehaving inmates to a segregated confinement unit for 'administrative' (as opposed to 'disciplinary') reasons seems to encourage the same 'standardless discretion' which the Supreme court found offensive in Sandin . . . Whatever [an inmate's] due process rights may be, they should not be extinguishable simply by virtue of the fact that the confinement was labeled by prison officials as 'administrative.'

---

[5]We note that "the gravity of placement" will never change. If this reason, standing alone, is a valid reason for remaining in AS, then conceivably the Appellant will never be released. As stated in ***Woodruff***, "indefinite administrative segregation should not be used as additional punishment beyond that authorized." ***Woodruff***, 2002 Tenn. App. LEXIS, at *21.

***Id.*** (quoting ***Jones v. Baker***, 155 F.3d at 816 (Gilman, J., concurring) (quoting ***McClary v. Kelly***, 4 F. Supp. 2d 195, 199 (W.D.N.Y. 1998) (alteration in original)).

As in ***Woodruff***, the respondent has not filed the administrative record in this matter.[6] Based on the information provided by the Appellant in his initial complaint, this Court cannot be sure Appellant's continued presence in AS is for any reason other than as punishment. The gravity of placement may, in fact, bear upon the decision to keep a prisoner in AS, but such cursory statements, without more, are not enough to convince this Court that Appellant's continued presence in AS is not actually punitive in nature. Perhaps if the Department were granting reviews in accordance with its own policies and procedures, the non-punitive nature of the prisoner's continued stay in AS would be clear. If the record discloses that Appellant's continued stay in AS is non-punitive in nature, then the actions of the administrative review panel will have, in actuality, been a form of disciplinary proceeding for which review via the common law writ is appropriate.

Accordingly, as in ***Woodruff***, "we conclude that [Appellant] has stated a claim for relief and that the writ of certiorari should issue requiring the Department to file the record of the proceedings at the administrative level. After the record is filed, the trial court shall conduct the appropriate judicial review." ***Woodruff***, 2002 Tenn. App. LEXIS, at *23. Such review will determine if the Appellant's stay in AS is truly punitive, thereby invoking the rights appurtenant to such a classification.

### *Conclusion*

For the foregoing reasons, we reverse the trial court's dismissal of the petition for common law writ of certiorari. The case is remanded with direction to the trial court to issue the writ and direct the filing of the record. The cost of this appeal is taxed to the Tennessee Department of Correction.

_____
DAVID R. FARMER, JUDGE

---

[6]This will be the effect of the granting of the writ, which, as discussed, can be done without notice to the respondent.